IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**ALLAIN GIROUARD and RENELLE GIROUARD,**

   **Plaintiff,**

v.

**COMMISSIONER OF INTERNAL REVENUE,**

   **Defendant.**

**CASE NO: 3:23-cv-1376**

## COMPLAINT FOR REFUND OF OVERPAYMENT OF INCOME TAX

### I. INTRODUCTION

1. This is an action for refund of income taxes paid by Plaintiffs, pursuant to 26 U.S.C. §1341. Plaintiffs seek a refund based on the involuntary return of income that was initially included in Plaintiff's taxable income for 2008, and ultimately repaid in 2014. The tax year to which this refund claim applies is 2014, though the events giving rise to the refund claim occurred between 2008 and 2014.

### II. JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1346 and 26 U.S.C. §1341.

3. Venue is proper in this district because the transactions, acts, and courses of conduct occurred within this district.

### III. PARTIES

4. Plaintiffs Allain Girouard and Renelle Girouard are individuals who have resided in St. Johns County, Florida at all times relevant to this action.

5. Allain Girouard and Renelle Girouard (the "Taxpayer"), are a married couple who filed a joint federal income tax return for the taxable years 2008 and 2014 (the tax years in question in this matter).

6. The Commissioner of Internal Revenue (the "Commissioner") is the Defendant in this matter and is responsible for administering and enforcing the internal revenue laws of the United States.

### IV. FACTUAL BACKGROUND

7. This refund claim arises out of a series of particularly unfortunate circumstances for the Taxpayer. The Taxpayer is an orthopedic physician, and prior to 2006, was operating a successful medical practice in Northeast Florida.

*The Taxpayer's Employee Profit Sharing Plan*

8. In 2006, the Taxpayer began investing funds for the benefit the employees of his medical practice in a qualified employer-sponsored profit-

sharing plan, known as the "Allain A. Girouard MD PA Profit Sharing Plan and Trust," Federal Tax ID number 59-3530666 (the "Plan"). Unbeknownst to the Taxpayer, the administrator of this Plan, Lydia Cladek Inc. ("LCI"), was operating an illegal Ponzi scheme, with fraudulent activity beginning as early as 2003.

### *The Taxpayer's Injury*

9.  In 2006, well before the Ponzi scheme was discovered, the Taxpayer sustained a serious closed-head injury in an accident at his medical office. Due to severe and debilitating neurological symptoms following multiple surgeries, in 2008 the Taxpayer was forced to close his physical therapy practice and lay off many employees. Because of downsizing his practice, also in 2008, the Taxpayer liquidated the Plan and distributed the vested portions thereof to his employees as severance, while receiving the balance as a taxable early withdrawal. The distribution associated with the termination of the Plan caused the Taxpayer to realize additional taxable income of $363,943.00 (2008 Form 1040 Line 16a), plus a 10% early withdrawal penalty, and thereby to incur additional 2008 income tax liability of $126,884. The Taxpayer reported tax liability of $126,884 related to the termination of the Plan on his 2008 Form 1040, together with an appropriate 10% early withdrawal penalty.

*Discovery of the LCI Ponzi Scheme*

10. In March 2010, the FBI raided and shut down the offices of LCI, following an investigation which revealed that LCI was in fact a Ponzi scheme. On November 23, 2010, the proprietor of LCI, Lydia I. Cladek ("Cladek"), was indicted in federal court in the Middle District of Florida on 14 counts of wire fraud, mail fraud, and conspiracy to commit wire and mail fraud. The United States also sought a $113,235,968.02 money judgment representing the criminal proceeds, as well as forfeiture of assets. On January 26, 2012, a federal jury found Cladek guilty on all 14 counts. On September 20, 2012, Cladek was sentenced to 30 years and 4 months in federal prison and ordered to pay more than $34 million in restitution. *See United States v. Cladek*, No. 3:10-cr-00277-TJC-MCR-1 (M.D. Fla. 2012). The Taxpayer was issued a victim identification number by the FBI, who investigated and cleared the Taxpayer of any wrongdoing or knowing involvement in the scheme.

*The LCI Clawback Proceedings*

11. Following the closure of LCI and the conviction of Cladek, a bankruptcy trustee was appointed over LCI to attempt recovery of profits paid by LCI to earlier-stage investors in the Ponzi scheme, for benefit of the scheme victims. *In Re: Lydia Cladek, Inc.*, No. 3:10-bk-02805-PMG, at Doc. 31 (Bankr. M.D. Fla. 2010). In a separate adversary proceeding, the Trustee

pursued the Taxpayer and attempted to claw back the profits that were paid from LCI to the Taxpayer upon termination of the Plan. *In Re: Lydia Cladek Inc., Terry J. Soifer Tr. v. Allain A. Girouard*, No. 3:12-ap-00137-PMG (Bankr. M.D. Fla. 2012). In the adversary proceeding, the trustee demonstrated that the Taxpayer had received $196,212.58 in profit from LCI upon termination of the Plan (the "Plan Profits"). *Id.*, at Doc. 1, Ex. A, p.12.

12. The Taxpayer resisted the clawback efforts, rejected the initial settlement offer to return the Profits, and vigorously represented himself in the adversary proceeding for more than two years, attempting to avoid making any clawback payment. However, when the Trustee ultimately filed a Notice of Lis Pendens threatening the Taxpayer's residence (*Id.* at Doc. 132), the Taxpayer finally agreed to mediate and settled the clawback proceeding against him for $200,000. This settlement was approved by the Court in the principal bankruptcy proceeding on August 12, 2014. *In Re: Lydia Cladek, Inc.*, No. 3:10-bk-02805-PMG, at Doc. #1539. The amount paid in settlement of the clawback adversarial proceeding against the Taxpayer ($200,000.00), exceeded the profits originally paid to the Taxpayer from LCI ($196,212.58). *Id.*, at Doc. 1534-1 (Settlement Agreement for payment of $200,000.00); *In Re: Lydia Cladek Inc., Terry J. Soifer Tr. v. Allain A. Girouard*, No. 3:12-ap-00137-PMG, at Doc. 143 (voluntary dismissal noting full payment of Settlement received).

### *Earlier Tax Proceedings*

13. As a consequence of the Taxpayer's injury, he encountered many financial difficulties between 2006 and the present, including difficulty with meeting his income tax liabilities for 2008. While the tax liability reported on 2008 Form 1040, Line 16a was incurred in 2008, apparently this liability was not fully satisfied until 2012, when the Taxpayer and the IRS reached an agreement for the IRS to levy the Taxpayer's life insurance in satisfaction of the outstanding 2008 tax liability. The IRS levied on life insurance cash value to satisfy outstanding liabilities in 2012 and refunded certain late payment penalties. None of these earlier levy or collection proceedings are primarily at issue in the present refund request.

### *Nature and Amount of 2008 Overpayment*

14. On the Taxpayer's 2008 Form 1040, line 16a, taxable income of $363,953 is reported as a result of terminating the Plan, together with an associated early withdrawal penalty of $36,395 (2008 Form 1040, Line 59). Of the Line 16a amount, $196,212.58 represents the profits paid by the LCI Ponzi scheme. Following the LCI Clawback proceedings, the Taxpayer was forced to return $200,000 pursuant to the settlement agreement. Accordingly, the Taxpayer has involuntarily returned all profits earned from the Plan, and has further lost $3,787.42 of his investment principal. Thus, all taxes paid in 2008 relating to the $196,212.58 in Ponzi profits, together with associated

portions of early withdrawal penalty, are overpayment of tax for Tax Year 2008.

15. The Taxpayer sought tax relief from the IRS for the taxes previously paid on the now-returned profits and the early withdrawal penalty. However, the IRS wrongly denied such relief.

## V. CAUSE OF ACTION

### COUNT I – CREDIT UNDER §1341 OF THE INTERNAL REVENUE CODE

16. Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 15 above.

17. This is a cause of action for credit for overpaid income taxes pursuant to 26 U.S.C. §1341. All conditions precedent to this action have been satisfied or waived.

18. 26 U.S.C. §1341 allows an income tax deduction or credit to a taxpayer who previously received taxable income under claim of right but must later repay all or part of that income. Section 1341 applies even if the year in which the income was initially reported would ordinarily fall outside the refund statute of limitations (26 U.S.C. §6511).

19. A §1341 claim has four elements. A taxpayer seeking credit for taxes paid on an item of income under §1341 must show: (i) the taxpayer properly included the item in the taxpayer's gross income for a prior tax year

7

because it appeared the taxpayer had an unrestricted right to that item; (ii) after the close of the tax year, it is established that the taxpayer did not have an unrestricted right to the item; (iii) there would be an allowable deduction for the item in the year reported, and (iv) the amount of the deduction exceeds $3,000. When these elements are met, the taxpayer may obtain the more favorable of a tax deduction or credit for the year in which the income is returned.

20. The first element of a §1341 claim – that the taxpayer initially appeared to have an unrestricted right to the item of income – is satisfied in this matter. When the Taxpayer voluntarily terminated the Plan in 2008, $196,212.58 in profits were distributed to the Taxpayer, and were reported on the Taxpayer's 2008 Form 1040 as income (together with the original principal of the qualified plan, which was also ordinary income as qualified plan proceeds). The "item" at issue – the Ponzi profits – was in fact tax income, as early-distributed proceeds of a qualified plan, and as investment return. Further, no facts known in 2008 indicated the Taxpayer had anything other than an unrestricted right to the item of income, as the Taxpayer reported the income and paid both income tax and early withdrawal penalty on the income.

21. The second element of a §1341 claim – that after the close of the tax year, it was established that the taxpayer did not have an unrestricted

right to such item – is also satisfied. It was not publicly known until after the FBI raids in 2010 that LCI was a Ponzi scheme and some profits may have been wrongly distributed. However, the Taxpayer had no immediately apparent losses for which to claim a refund, as he was no longer invested in the Ponzi scheme at the time of discovery. Nevertheless, in 2012, it became clear that the Taxpayer was under a legal obligation to restore the income, specifically because Ponzi scheme law compelled the return of profits. Furthermore, the settlement agreement for $200,000 was reached after lengthy and vigorous litigation of the issue by the Taxpayer. Accordingly, the $200,000 clawback payment was evidently the product of a non-collusive settlement agreement, was in no way a voluntary return of income, and did not implicate the "claim of wrong" doctrine, as the Taxpayer did nothing knowingly illegal.

22.    Finally, there is an allowable deduction for the taxable year at issue that exceeds $3,000, satisfying the third and fourth elements of the §1341 claim. Per current IRS guidance, clawback losses are plainly considered ordinary investment loss for purposes of §1341. *See* https://www.irs.gov/newsroom/faqs-related-to-ponzi-scenarios-for-clawback-treatment. Because the Taxpayer clearly entered the transaction for profit, depositing funds with a manager at arm's length to earn a return, and because the loss exceeded the $3,000 threshold, the lost profits represented

9

by the clawback payment are deductible in 2008 as ordinary investment loss, pursuant to 26 U.S.C. §165. The $200,000 clawback payment thus satisfies the final elements of the Taxpayer's §1341 claim.

23. Once ordinary investment loss deductibility in the original year is established, §1341(a)(5) permits the Taxpayer to claim either a deduction or a credit for that year. Pursuant to §1341 and as further set forth in the Internal Revenue Manual ("IRM"), a §1341 claim regarding clawback of Ponzi profits plainly may be claimed as either (a) an ordinary investment loss deduction, or (b) a refundable credit under §1341(a)(5). IRM §21.6.6.2.10.2 (2), "Claim of Right – IRC 1341, Repayment of More Than $3,000". Accordingly, the Taxpayer may claim either an investment loss deduction in the amount of the clawed back profits, or the §1341 credit calculated as the difference between tax actually paid and the tax liability for the year figured without the clawed back item of income.

24. In this case, the Taxpayer seeks a credit under §1341 as set forth more fully below.

## *Timeliness of Claim*

25. In addition to meeting all elements of a §1341 claim, Plaintiff's claim is timely under the "Informal Claim" doctrine.

26. The "Informal Claim" doctrine originates from *United States v. Kales*, 314 US 186, 194 (1941). The central holding of *Kales* explains that so

long as written correspondence within the relevant refund statute of limitations for a claim fairly apprises the IRS of the nature and extent of the claim, the statute of limitations is tolled by the informal claim so long as a correct formal claim is filed to clarify any procedural deficiency. *Id.*

27. More recently, the Tax Court has typically utilized a three-factor test to evaluate informal claims, set forth as follows:

1) The writing is delivered to the IRS before the expiration of the applicable period of limitation;

2) The writing, in conjunction with the surrounding circumstances, adequately notifies the IRS that the taxpayer is claiming a refund and the basis for it; and

3) Either the IRS waives the defect by considering the refund claim on its merits, or the taxpayer subsequently perfects the informal refund claim by filing a formal refund claim prior to final denial.

*See e.g. Jackson v. Comm'r*, T.C. Memo. 2002-44.

28. Factor 1 is satisfied, as the Taxpayer delivered multiple informal written requests within the refund statute of limitations for tax year 2014. Examples of these mailings are included as Exhibit A hereto.

29. Factor 2 is also satisfied, as the Taxpayer's repeated correspondence between 2014 and 2017 detailed the nature of the 2008 reported income, the prosecution of the Ponzi scheme and bankruptcy

proceedings against the taxpayer, and ultimate repayment 2008 income in 2014 pursuant to the Ponzi clawback settlement agreement. These are the key facts necessary to apprise the IRS of the nature and extent of the Taxpayer's claim under the Informal Claim doctrine, even though the taxpayer, as a layperson, initially failed to comprehend the highly technical nature of the §1341 claim of right credit as the proper procedural avenue for the claim. The Taxpayer even timely filed 1040X amended returns for both 2008 and 2012, attempting to formally document the return of the item of income and comply with procedural refund requirements for the tax years in which the taxpayer initially understood the refund right to have arisen.

30.   Factor 3 is also satisfied, as multiple IRS examiners have considered the claim on its merits, and a 1040X was ultimately filed for Tax Year 2014 which was accepted and processed by the IRS. The IRS notified the Taxpayer in November 2021 that it did not yet have adequate information to demonstrate a timely claim. Despite presenting the Informal Claim argument (and extensive supporting evidence therefor) to two additional IRS examiners in the past 24 months, and engaging in detailed overpayment interest calculations with the IRS Tampa field office in anticipation of an allowed refund, no refund or final denial has yet been received by the Taxpayer.

31.   The policy of the refund statute of limitations, as set forth in 26 U.S.C. §6511, is to protect the IRS from "the assertion of stale claims which

would be difficult or impossible to determine on their merits due to the passage of time." *Newton v. U.S.*, 163 F. Supp. 614 (Ct. Cl. 1958). The Taxpayer's refund request has not been first presented at a late date after relevant evidence has become stale or unavailable, but has been pursued diligently and continuously since 2014, when the claim could first have been cognizable..

32.     Accordingly, the refund statute of limitations for Tax Year 2014 is tolled by the taxpayer's informal claims, pursuant to *Kales*, and Tax Year 2014 remains open for the acceptance and issuance of a refund based on the Taxpayer's §1341 claim.

## *Calculation of Credit and Refund Owed*

33.     Because a 2014 refund claim remains timely, pursuant to informal claim correspondence that has tolled the 2014 refund statute of limitations, all 2008 tax liability incurred due to the Taxpayer's receipt of Plan income which was later clawed back by the LCI Trustee may be refunded under §1341 in tax year 2014, as claim-of-right income later required to be involuntarily returned. Specifically, the Taxpayer may take an ordinary investment loss deduction in the amount of $196,212.58, for a refund of $68,674.40, or may claim the §1341 credit, for a refund of $78,330.15.

34. Utilizing the ordinary investment loss deduction, an additional deduction of $196,212.58 is entered on Line 13 of the Taxpayer's 2008 Form 1040, reducing tax liability by $68,674.40 and producing a refund in the same amount.

35. Utilizing the §1341 credit, 2008 taxes are refigured without the clawed back item of income. Thus, Line 16a of the Taxpayer's 2008 Form 1040 may be reduced from $363,953 to $167,740.42, reducing 2008 tax liability by $58,709.15. Further, the early withdrawal penalty on Line 59 may be reduced to $16,774, a penalty reduction of $19,621. Accordingly, figuring the Taxpayer's 2008 taxes without the clawed back item of income results in a §1341 credit equal to $78,330.15. Further, pursuant to §1341(b)(1), the amount of the §1341 credit is treated as a payment of tax within the refund limitations time period for 2014, the year of the Clawback payment. Accordingly, the amount claimed as §1341 credit is fully refundable for tax year 2014.

36. The §1341 credit may be claimed in the year of payment of the clawback. The Taxpayer reached the Clawback settlement and paid the agreed amount to the trustee in 2014. *In Re: Lydia Cladek Inc., Terry J. Soifer Tr. v. Allain A. Girouard*, No. 3:12-ap-00137-PMG, at Doc. 143 (voluntary dismissal noting full payment of Settlement received in 2014).

37. The §1341 credit appears to provide the best result for the Taxpayer (due to the partial refund of the qualified plan early withdrawal penalty under this method). Accordingly, the Taxpayer requests a §1341 credit in the amount of $78,330.15 be applied to the Taxpayer's 2014 tax return and refunded to the Taxpayer, together with any applicable overpayment interest from 2014 to present. The Taxpayer does not assert that overpayment interest accrues from 2008 to 2014.

38. If IRS calculations of applicable overpayment interest result in a greater refund utilizing the deduction method rather than the §1341 credit, the Taxpayer requests a refund under whichever prong of §1341(a)(5) produces a greater total refund.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Taxpayer respectfully requests that this Court:

1. Enter judgment in favor of the Taxpayer and against the Commissioner, ordering a refund of the income taxes paid by the Taxpayer for the taxable year 2008 as a §1341 credit for tax year 2014, in the amount of $78,330.15, together with any applicable overpayment interest;

2. Grant any additional relief that this Court deems just and proper.

DATED this 21st day of November, 2023.

                        Respectfully Submitted,

                        /s/ Jonathan P. Hermes, Esq.

                        Attorney for Plaintiffs
                        Florida Bar No. 1011335
                        Ginn & Patrou PLLC
                        460 A1A Beach Blvd.
                        St. Augustine, FL 32080
                        904-461-3000
                        service@ginnpatrou.com
                        jhermes@ginnpatrou.com